Filed 1/8/16  P. v. Rubal CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C076023 |
| Plaintiff and Respondent, | (Super. Ct. No. 62088013A) |
| v. | |
| JOSE VINCENT RUBAL, | |
| Defendant and Appellant. | |

Defendant Jose Vincent Rubal appeals from the trial court's orders denying his petition for resentencing pursuant to Penal Code section 1170.126 (unless otherwise stated, statutory references that follow are to the Penal Code) based on the court's finding that resentencing posed an unreasonable risk of danger to public safety.  He contends the trial court's decision was an abuse of discretion because it was not supported by sufficient evidence and was based on an erroneous understanding of the relevant standard.  He also contends that the court erred in failing to apply the beyond a

1

reasonable doubt standard and in failing to obtain a supplemental probation report. In a supplemental brief, defendant contends that the definition of danger to public safety found in the resentencing provision of Proposition 47, section 1170.18, applies to the danger to public safety finding under section 1170.126. We affirm the trial court's orders.

FACTS AND PROCEEDINGS

On December 16, 2008, a car that defendant, a validated Norteno gang member, was driving was stopped by a law enforcement officer in Roseville. As the officer was walking to defendant's car, defendant drove off at a high rate of speed, then pulled over and ran from the car successfully escaping for the moment. In the car, officers found 130 grams of marijuana, a digital scale, 15 Vicodin pills, and burglary tools.

The car was later purchased by Pick-n-Pull in Rocklin and, on January 21, 2009, a Pick-n-Pull employee found a .25-caliber Beretta under trash on the floorboard.

Defendant was on parole at the time of the traffic stop, and had failed to report with his parole office on December 8, 2008. Sometime between December 8, 2008 and February 21, 2009, when defendant was arrested in Oklahoma, he spoke to a fellow gang member and asked if the latter was willing to accept responsibility for the charges that had been brought against him.

Defendant pleaded no contest to transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)), solicitation to commit a crime (§ 653f, subd. (a)), admitted two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and three prior prison terms (§ 667.5, subd. (b)) with a *People v. Harvey* (1979) 25 Cal.3d 754 waiver (*People v. Rubal* (Feb. 23, 2012, C067562) [nonpub. opn.] at p. 1). The trial court sentenced him to 36 years to life in state prison. Defendant appealed, and we affirmed his conviction in an unpublished opinion. (*Id.* at p. 2.)

2

On August 21, 2013, defendant filed a petition for recall of sentence pursuant to section 1170.126.

Defendant's criminal and prison disciplinary history is as follows:

On August 6, 1989, defendant, two other adults, and four juveniles, entered a residence and took numerous items valued at over $4,000. Defendant, who was 18 at the time, pleaded guilty to first degree burglary (§ 459) and was placed on five years' probation.

In January 1991, defendant admitted violating his probation by testing positive for methamphetamine and failing to report to probation. He was given a four-year prison term with execution suspended and committed to the California Rehabilitation Center (CRC).

In July 1993, defendant was convicted of possession of a hypodermic syringe (Bus. & Prof. Code, § 4149) and resisting an officer (§ 148, subd. (a)). He was terminated from CRC and sent to prison in October 1993 after admitting his gang affiliation to CRC officials.

Less than two months after being paroled, defendant was convicted of simple battery (§ 242) in May 1994. Defendant committed his second strike in August 1994, when he was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) after he stabbed a man who he thought was calling him a snitch. Defendant's victim suffered a collapsed left lung and a small incision wound to his left rib cage area. Defendant was sentenced to a two-year state prison term.

In May 1996, defendant was given a nine-month term for violating parole by associating with known Northern Structure prison gang members and possessing a replica firearm. In April 1997, while he was awaiting a hearing on an allegation of a parole violation, defendant assaulted an inmate and lost 90 days of credit. He was given a six-month term in July 1997 for violating parole by associating with known gang members.

In February 1998, one month after being released on parole, defendant violated parole by associating with known gang members and being drunk in public. He received an eight-month sentence.

Defendant, while under the influence of methamphetamine, rear-ended a water truck in Roseville in April 1999. His five-year-old son suffered seat belt injuries in the collision. Defendant pleaded guilty to child endangerment (§ 273a, subd. (a)) and felony driving under the influence (Veh. Code, § 23153) and admitted a strike. He was sentenced to eight years eight months in state prison.

On December 1, 1999, defendant approached three members of a rival gang in the prison yard and made a comment that led to a riot. The Department of Corrections and Rehabilitation found defendant committed a rules violation by inciting a riot. On October 17, 2000, defendant was found to have committed another rules violation of inciting others into behavior which could lead to violence when he urged fellow inmates to refuse to leave the prison yard. Defendant was transferred to Pelican Bay and lost 360 days of credit after he and another inmate assaulted a third inmate with stabbing instruments in January 2002.

Defendant was paroled in July 2007. In March 2008 and September 2008 he was found to have violated his parole by associating with known gang members. He was placed on parole hold in December 2008 after Roseville police officers found a picture taken in November 2008 of him posing with another validated gang member.

While serving his current prison term, defendant was found to have committed a rules violation in June 2011 by participating in disruptive cadence calling with other members of his gang during exercise in the prison yard. He was found guilty of another rules infraction by possessing marijuana in July 2011. In September 2012, defendant told prison officials he was no longer in good standing with his gang and wanted to leave it. He was in the secure housing unit due to fears for his safety.

4

There were no witnesses at the hearing on defendant's petition. The trial court denied the petition in a written ruling. The court found the prosecution had the burden of proving unreasonable risk of danger by a preponderance of the evidence. In support of its ruling, the trial court noted defendant had spent only 20 percent of his adult life out of custody, committed six felonies, multiple misdemeanors, eight parole violations, and numerous prison rules violations. Recognizing that defendant's decision to leave his gang in September 2012 was a "significant decision," which was "an important step towards becoming a more law abiding person," the court could not "disregard the pattern of anti-social behavior and violence demonstrated by the petitioner as an adult for more than 20 years."

DISCUSSION

I

*Substantial Evidence and the Correct Legal Standard*

Defendant contends the trial court's denial of his petition was an abuse of discretion because it was not supported by substantial evidence and because the court applied the wrong legal standard to his petition.

A.    Substantial Evidence

Following the Three Strikes Reform Act of 2012 (the Act), a defendant convicted of a felony with two or more prior strike allegations is subject to a sentence of 25 years to life if the current conviction is a serious or violent felony but is subject only to a two strike sentence if the current felony is not serious or violent. (§§ 667, subd. (e)(2)(A), (e)(2)(C), 1170.12, subd. (c)(2)(A), (c)(2)(C); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 170.)

Section 1170.126 allows a person presently serving a three strikes sentence for a felony that is neither serious nor violent to petition for resentencing as a second strike

offender. (§ 1170.126, subd. (a).) A prisoner is disqualified from resentencing if his current conviction or criminal record come within the four disqualifying factors listed in sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C). (§ 1170.126, subd. (e).) If the prisoner is not subject to one of the disqualifying factors, then the trial court shall resentence him under the two strikes provision "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In making this determination, "the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

Since section 1170.126 vests the trial court with discretion to determine whether resentencing defendant poses an unreasonable risk to public safety, we review the court's decision under the familiar abuse of discretion standard. Using this standard, we consider whether the ruling "exceeds the bounds of reason or is arbitrary, whimsical or capricious. [Citations.] This standard involves abundant deference to the trial court's rulings." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)

In addition, we review the factual findings upon which a court's unreasonable risk determination is based under the equally familiar substantial evidence standard. Accordingly, we review the entire record in the light most favorable to the court's factual findings to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make those factual findings by a preponderance of the evidence. (Cf. *People v. Bolin* (1998) 18 Cal.4th 297, 331.) But if the factual findings are not supported by substantial evidence, they cannot form the basis for an unreasonable risk determination. (See *People v. Cluff* (2001) 87 Cal.App.4th 991,

6

998 [court abuses discretion when factual findings critical to decision find no support in evidence].)

Defendant claims the trial court's ruling is not supported by substantial evidence because it "relied almost entirely on [defendant's] prior criminal record and past record of in-prison rule violations to find that he would unreasonably endanger public safety if resentenced." He notes that his strike convictions are over two decades ago and only one of them involved actual violence. According to defendant, his history of crime and prison rule breaking is "entwined" with "his prior drug use and his gang affiliation." He claims the trial court "gave short shrift to what has clearly been a sea change in [his] life" by leaving his gang. Arguing that section 1170.126 looks to future dangerousness rather than past dangerousness, defendant concludes that the trial court's ruling lacks substantial evidence in light of his relative lack of prison rules violations in his last five years in custody, the fact that he is over 40 years old and therefore is less likely to engage in criminal behavior, and his decision to leave his gang.

Defendant's argument effectively asks us to review the trial court's decision de novo rather than determining whether its factual findings are supported by substantial evidence and whether the conclusion it draws from those findings is an abuse of discretion. We decline the invitation. The trial court's findings of fact, that defendant had a lengthy record of crime, parole violations, and prison rules violations are amply supported by the evidence. The trial court did not give "short shrift" to defendant's relatively recent decision to leave his gang, but reasonably concluded that this decision, while a good start did not undo an adult life spent almost entirely in custody during which he committed six felonies including two strikes, eight parole violations, and numerous misdemeanors and prison rules violations. As previously noted, subdivision (g) of section 1170.126 allows the trial court to consider defendant's criminal record and his prison record in determining the risk a defendant may pose to the public if he is resentenced. It was not an abuse of discretion for the trial court to conclude that

7

resentencing defendant posed an unreasonable risk of danger to public safety based on his lengthy record of criminal behavior and prison rules violations even though he recently left his gang.

We note that defendant also claims that the Placer County Superior Court grants section 1170.126 resentencing petitions at a much lower rate than courts in other counties. This contention is irrelevant to the question at hand, which is whether the decision *in this case* is an abuse of discretion. The claim is also forfeited since the evidence supporting this claim is not in the record and was not presented to the trial court.

B.     The Trial Court's Standard for Determining the Petition

Defendant contends the trial court abused its discretion because it did not understand that section 1170.126 created "a presumption and an expectation [in favor] of" being resentenced "that is overcome only if the court in its discretion finds the petitioner would present an unreasonable risk of danger to public safety if resentenced." According to defendant, this presumption is created by the use of the terms "shall" and "unless" in subdivision (f) of section 1170.126. Defendant bases his reading of these terms on what he sees as the purpose of the Act, to reserve "life sentences for dangerous criminals like rapists, murderers, and child molesters" and reducing the terms for "low risk, non-violent inmates" convicted of "minor" or "petty" crimes. (Prop. 36, § 1, preamble and ¶¶ 4-5.) From this, he concludes that the section 1170.126 hearing is the converse of a hearing on a motion to strike a prior strike conviction, so that resentencing will be denied only in "extraordinary cases upon proof of current dangerousness." (Cf. *People v. Philpot* (2004) 122 Cal.App.4th 893, 907 [striking prior strike reserved for extraordinary circumstances].)

The text of section 1170.126, subdivision (f) does not include language creating a presumption. Subdivision (f) states: "Upon receiving a petition for recall of sentence

8

under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e). If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced pursuant to paragraph (1) of subdivision (e) of Section 667 and paragraph (1) of subdivision (c) of Section 1170.12 unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."

As explained by the Second District Court of Appeal Division Three, dangerousness is a hurdle that must be cleared in order for a defendant to be resentenced. "[S]ection 1170.126, subdivision (f) does not state that a petitioner eligible for resentencing has his sentence immediately recalled and is resentenced to either a second strike term (if not dangerous) or a third strike indeterminate term (if dangerousness is established). Instead, the statute provides that he 'shall be resentenced' to a second strike sentence 'unless the court . . . determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' In other words, dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1302-1303, fn. omitted (*Kaulick*).) Agreeing with *Kaulick*, we do not read the text as creating a presumption for resentencing.

Even if we did consider the text ambiguous regarding a presumption in favor of resentencing (see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1372 [finding ambiguous section 190.5, which stated a defendant between the ages of 16 and 18 convicted of special circumstances murder, " 'shall be confine[d] in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life' "]), we first turn to

9

the Act's legislative history to resolve the ambiguity. "Where there is ambiguity in the language of the measure, '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' [Citation.]" (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037.) The Voter Information Guide states that the Act "[a]uthorizes resentencing for offenders currently serving life sentences if third strike conviction was not serious or violent and judge determines sentence does not pose unreasonable risk to public safety." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) p. 48.) This description of the resentencing provisions of the Act is inconsistent with a presumption in favor of resentencing. There is no presumption; the Act does no more than authorize a court to resentence a defendant if the Act's conditions are met. We accordingly conclude that the trial court's discretion under section 1170.126, subdivision (f) is not circumscribed by a presumption in favor of resentencing.

We likewise reject defendant's contention that a section 1170.126 petition for resentencing is the converse of a motion to strike one or more strikes. Our Supreme Court found the three strikes law was intended "to restrict courts' discretion in sentencing repeat offenders" based on the ballot arguments stating that the law would not allow a sentencing court to "grant probation, suspend execution or imposition of sentence [citations], divert the defendant, or commit the defendant to any facility other than state prison [citations]." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 528.) In contrast, the Act specifically grants the trial court authority to deny a defendant's petition for resentencing based on the risk of danger to public safety and contains no text or history limiting that discretion. Accordingly, a trial court exercises its discretion in applying section 1170.126 as it does in the many other instances where the Legislature vests discretion with the trial court. Since the record does not show that the trial court did not understand its discretion, there was no legal error and therefore no abuse of discretion.

II

*The Evidentiary Standard*

Defendant contends the trial court erred in applying the preponderance of evidence rather than the proof beyond a reasonable doubt standard to the question of the danger to public safety if defendant did not serve out his three-strikes sentence. According to defendant, section 1170.126 is much more like the determinate sentencing law found unconstitutional in *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856], than the discretionary regime that replaced it. He claims that in his case, "the maximum sentence otherwise available would be 14 years and four months, while a dangerousness finding authorizes a minimum sentence of 25 years and a maximum sentence of life." From this, he concludes that pursuant to *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*), he has a due process right to the beyond a reasonable doubt standard on the danger to public safety question.

We have rejected this argument in another case, finding it based on the mistaken premise that the two strikes sentence is now the presumptive sentence. "Reducing the sentence of an individual like the current petitioner, who is serving a valid sentence imposed more than a decade ago, is not constitutionally compelled; it would be an act of lenity. The trial court takes 'the original sentence as given'; doing so leads to the inevitable determination that section 1170.126 merely provides a limited mechanism within which the trial court may consider a reduction of the sentence below the original term. Section 1170.126, like the statutory mechanism under federal law for a sentencing reduction, is distinguishable from other sentencing proceedings, and the potential reduction of the sentence is narrowly circumscribed by the statute. The result of a proceeding under section 1170.126 may well be that the petitioner's originally imposed, lawful sentence remains undisturbed. Under the circumstances, the trial court's determination of facts that affect whether the defendant will be resentenced does not

11

implicate the right to a jury trial as described in the *Apprendi* cases." (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1336; see also *Kaulick, supra,* 215 Cal.App.4th at pp. 1302-1303 [*Apprendi* does not apply to dangerousness finding under section 1170.126 as two strikes sentence is not the presumed sentence].)

*Apprendi* applies only when a fact is used to subject a defendant to a greater potential sentence. (*People v. Towne* (2008) 44 Cal.4th 63, 77.) Since the danger to public safety finding that disqualifies defendant from resentencing does not increase his sentence, *Apprendi* does not apply.

## III

### *Supplemental Probation Report*

Defendant contends the trial court erred in failing to order a supplemental probation report. Defendant admits that neither he nor the prosecution requested a supplemental probation report. While recognizing that as a third strike or (if resentenced) second strike offender, he is not eligible for probation (§ 667, subd. (c)(2)), he nonetheless claims since the decision on whether to resentence him "is functionally the equivalent of the probation decision," he was entitled to a supplemental probation report (see *People v. Dobbins* (2005) 127 Cal.App.4th 176, 180-181 [supplemental probation report mandatory when a significant period of time lapses between the original report and a sentencing or resentencing]; Cal. Rules of Court, rule 4.411(b) [court should order probation report even if defendant not eligible for probation]).

Since defendant is ineligible for probation, his failure to request a supplemental probation report forfeits the contention on appeal. (*People v. Franco* (2014) 232 Cal.App.4th 831, 834 (*Franco*).)

Defendant's contention also fails on the merits. A court is not required to order a probation report if a defendant is statutorily ineligible for probation such as when a defendant has a prior strike. (*Franco*, *supra*, 232 Cal.App.4th at p. 834; *People v.*

12

*Dobbins, supra*, 127 Cal.App.4th at p. 180.) *In Franco*, the Court of Appeal declined the defendant's invitation to impose such a duty in the context of a section 1170.126 hearing. (*Franco,* at pp. 833, 835.) Agreeing with *Franco,* we reject defendant's request to impose such a duty here.

IV

*Standard for Determining Dangerousness*

In a supplemental brief, defendant argues that the standard for determining dangerousness enacted in Proposition 47 should apply to his petition for resentencing and that we should return the matter to the trial court for a new determination of defendant's continued danger to public safety under that standard. This issue is currently before the California Supreme Court. (See, e.g., *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825; *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676.)

The stated "[p]urpose and [i]ntent" of Proposition 47 include, among other things, "[r]equir[ing] misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes"; "[a]uthoriz[ing] consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors"; and "[r]equir[ing] a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, subds. (3), (4) & (5), p. 70.)

Proposition 47 also enacted section 1170.18, under which: "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act')

13

had this act been in effect at the time of the offense may petition for a recall of sentence . . . [and] request resentencing.  [¶] . . . [¶]

"If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.  In exercising its discretion, the court may consider all of the following:  [¶]  (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes.  [¶]  (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated.  [¶]  (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subds. (a), (b).)  Subdivision (c) of section 1170.18 provides:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

Defendant asserts the definition of "unreasonable risk to public safety" in section 1170.18 supersedes the definition of that term in section 1170.126 as applied in his case.  His argument is primarily based on the rule of retroactivity set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  Under the *Estrada* rule, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final (the Legislature deeming its former penalty too severe), unless there is a "saving clause" providing for prospective application.  (*Id.* at pp. 742, 745, 748.)  According to defendant, section 1170.18, like section 1170.126, is remedial legislation that is therefore "entitled to the fullest retroactive application."

*Estrada* does not apply here because applying the definition of "unreasonable risk of danger to public safety" in Proposition 47 to petitions for resentencing under the Act

14

does not reduce punishment for a particular crime. Rather, it arguably changes the lens through which the dangerousness determinations under the Act are made.

This is consistent with our Supreme Court's most recent interpretation of *Estrada*. "*Estrada* is . . . properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*People v. Brown* (2012) 54 Cal.4th 314, 324.) Expanding *Estrada's* scope to include the definition of "unreasonable risk of danger to public safety" in Proposition 47 in a petition for resentencing under the Act would conflict with "section 3['s] . . . default rule of prospective operation" (*Ibid.*) Since there is no evidence in Proposition 47 that this definition was to apply retrospectively to petitions for resentencing under the Act, applying *Estrada* here would be improper given that the definition of "unreasonable risk of danger to public safety" in Proposition 47 does not reduce punishment for a particular crime. Therefore, the definition of "unreasonable risk of danger to public safety" found in Proposition 47 does not apply to section 1170.126 petitions for resentencing decided before the effective date of Proposition 47.

Defendant relies on *Holder v. Superior Court* (1969) 269 Cal.App.2d 314. Since *Holder* was decided before the Supreme Court's interpretation of *Estrada* in *Brown*, it is inapposite.

We accordingly reject defendant's request for retroactive application of the language in section 1170.18 to his petition for resentencing pursuant to section 1170.126.

15

DISPOSITION

The trial court's orders are affirmed.


      HULL      , J.


We concur:


      RAYE      , P. J.


      BUTZ      , J.